Case number 22-1631, Alticor Global Holdings Inc, et al. v. American Intl Specialty Lines Insurance Company, et al. Argument not to exceed 15 minutes per side. Mr. Moskowitz, you may proceed for the appellant. Good afternoon. Good afternoon, Your Honors. Keith Moskowitz on behalf of the appellant. May it please the Court, I reserve three minutes for rebuttal. Very well. This is a case about a sophisticated business and whether it's going to be held to the benefits of the bargain it struck with two different insurance companies with respect to an insurance program it put together. I'm going to focus on the other insurance issue first because there the district court did not follow clear Michigan law and in addition to that, compounded the error by not properly interpreting this court's decision in white. After that, I'll turn to the exclusions and obviously if the exclusions go in our favor, we don't reach other insurance. I thought it helpful to start with other insurance first. The district court erred principally by concluding that the Michigan Court of Appeals decision in Olosol and then ultimately the additional commentary from the Michigan Supreme Court in the Jarrett case was based upon solely public policy under the No Fault Act. But that's not what Olosol decided as established by the Michigan Supreme Court in Jarrett. Let me ask this question. I know that someone that's uninsured, that would not be insurance. If someone is self-insured, would that be considered other insurance? That's an excellent question and it really does exemplify the Michigan law and this court's decision in white. So in Michigan, the law is clear. Under common understandings of insurance, which is what the Olosol Court applied and the Michigan Supreme Court in Jarrett endorsed, if an entity is self-insured, that is the functional equivalent of insurance. So they are enterprise rental car company that was indemnifying itself against laws. I mean, is that limited to the No Fault Act? Not at all. Not at all. And in fact, we see that simply from the Michigan Supreme Court case in Jarrett where the court says while Olosol relied in part on provisions of the No Fault Act and the Financial Responsibility Act, it also discussed the common understanding of insurance. And from those common understandings, the Michigan Supreme Court said that while that was not dispositive of the issue in front of it in Jarrett, which was a self-funded long-term disability plan, not a No Fault Act case. They said it was a strong argument that a self-funded long-term disability plan would also constitute insurance. So Michigan law here is clear under the common understanding. It seems to me the cases around the country are split on this issue. Do you agree with that? I agree that there is a split, but I think the split is very narrow. And only the First Circuit Court of Appeals would go against our position, and let me explain. In this court's decision in White, which was following the Ohio Supreme Court case in Gilchrest, the issue there was a fronting insurance policy, self-insurance or insurance. Now, the critical distinction is between Ohio and Michigan law. As I just indicated, Michigan law is clear. Self-insurance is insurance. Under Ohio law, self-insurance is not insurance. That's a key differentiation between the two state laws. However, when the Gilchrest court and this court in White looked at the fronting insurance policy, they held that the fronting insurance policy is insurance. It is not self-insurance. So in the Sixth Circuit, a fronting insurance policy is insurance, and indeed, directing this court's attention to page 458 of the White decision, which is from this court, this court said, therefore, Gilchrest held that uninsured, underinsured motorist coverage was available under the automobile liability policy issue. So the Sixth Circuit. In this particular case, what makes the insurance collectible, even if we agree that self-insurance or the fronting policy is other insurance? What makes it collectible? It's collectible, and this is explained by the Eighth Circuit, another case that goes in our favor in the Valspar case, because contractually, what the fronting insurance company, Ace, agreed to do was indemnify for loss, was to defend against loss. And as the Eighth Circuit pointed out, it does not matter what practically occurs in the handling of the case. What matters is what the contractual undertaking is. And here, Ace Insurance Company agreed to pay losses. Had Amway wished, they could have availed themselves of that contractual right. In fact, one could argue they did. Is that only if they were insolvent? When would they be able to get the insurance, I suppose? So certainly when they're insolvent, but they could get the insurance independent of insolvency. For example, if they had to satisfy, if Amway had to satisfy a judgment, and they were having cash flow issues in a quarter, they could turn to Ace and say, pay that judgment. That judgment would be paid. As the Eighth Circuit pointed out in Valspar, then the question was – Then they would owe the money to Ace. Then they would owe the money, but there's no guarantee Ace would be able to recover here because of the – But again, that's kind of an insolvency issue. I'm not saying – I'm just trying to figure out when they would be able to collect. Yeah, I think it's – But I'm curious whether if they're insolvent, they aren't collecting. I mean, the insolvency protection is for the plaintiff, right? It's not really for the defendant because they're insolvent. What do they care? They're out of business or whatever. So I'm curious about whether it's – what is that collectibility? Who is that in reference to? Is it a plaintiff? Is it them? I think it's them, right? I think it's principally for – it's principally – It could be for either the plaintiff or the insured. Again, it's collectible in the sense that – And let me use another example from this case. The phrase in your policy is that such insurance as is provided by this policy shall be in excess of other valid and collectible insurance available to you. So it is to Amway. It's not to other parties, right? I agree with that. Okay. I mean, that's what it says. Yeah. Yeah, I – Okay. Do you agree with me that there are two phrases here, valid and collectible? I mean, I agree with you that the ACE insurance is a valid insurance. But I question whether it is collectible insurance available to Amway. And here I think it's interesting that ACE insurance is not involved in this case at all. They are not a party. They're not a third party. They have not moved to intervene in the case. They haven't filed an amicus brief. ACE insurance has no interest whatsoever in the case because this case does not affect them one iota. And even if there's a remand to allocate between the other insurance that you were talking about, ACE is not in the case. So doesn't that really – doesn't that kind of show evidence that they are not a collectible insurance available to Amway since they have no interest in this litigation at all? And I would respectfully say no for this reason. The measure of collectibility is at the time of contracting, not after the loss. So here, Your Honor, is correct. ACE has already paid the loss, so we don't have an issue of the ability of the loss to be paid. It's been paid. But that's not when it's measured. It's measured at the time of the loss. At the time of the loss, the ACE insurance contractually obligated itself to pay, and therefore it was very much collectible by Amway. As I said – They haven't paid. I thought you told me they've already paid. They haven't paid anything here, have they? Correct. ACE hasn't paid. My point is that – They're not going to pay because it is a fronting insurance policy, which basically is for the sake of the, I guess, the insurance commissioners, but it's paper insurance that is not collectible insurance. It's valid insurance, but I don't see it as collectible. You agree that collectible means something other than valid, right? Yes. Okay. Yes. What does collectible mean if it doesn't – other than valid in here? Well, collectible means it's capable, of course, of being collected, so the insurance can be paid. And the point as to the other insurance clause is it's measured at the time of the loss, not after the loss. So at the time of this loss, the ACE insurance was very much collectible, and here's an example of why. Wasn't it collectible after Amway pays the deductible, which is the same amount as the limits of insurance? So, I mean, they wouldn't have to pay until after – well, they never would pay, obviously. So how is it collectible in that circumstance? So the deductible works after the payment is made. So ACE pays, and then ACE charges back the loss to Amway, and that could have occurred. As the Tenth Circuit pointed out in the Air Liquide case, allowing, in this case, Amway, to avoid the obligations that it contracted through. So it got reduced premiums. If it had purchased first-dollar insurance from ACE, we wouldn't be here because Amway would have turned to ACE under the first-dollar insurance. And what the Tenth Circuit case in Air Liquide stands for – But why didn't ACE pay? If they had an obligation to pay first and then Amway pays them back, why didn't they pay here? It's because Amway made a decision not to seek the recovery from ACE. And as the Eighth Circuit points out in Valspar, that's a practical decision that a contracting party made that it did not have to make. As the Eighth Circuit pointed out – Did they file a claim with ACE or at least put them on notice? Yeah, so they did file a claim with ACE. ACE responded with reservation of rights letters. In fact, the undisputed evidence in the record, and that ACE was going to cover the claims. And they responded. And the second point that's very important here is that when Amway sought to access excess insurance above the ACE policies from National Union, in those policies, a condition precedent is satisfaction of the limits of liability, payment of the limits of liability. Under the ACE policy, Amway pled affirmatively in this declaratory judgment action, we satisfy the limits of the ACE policy. So, therefore, the ACE policy must be collectible. It must be available. Because Amway itself said it satisfied that condition precedent by exhausting the ACE policy. And because it understood that to access the excess policy, they had to exhaust. And I would just – the last point I would make on this in terms of the issue of collectability was to go back to this court's decision in White, which follows the decision in Gilchrest. And there, the fundamental issue was, was there a risk transfer? Is this a true insurance product? There is no risk here by the insurance company. That's why it's a fronting policy. I mean, the risk is all on the insured, isn't it, not Amway? The risk is on Amway except as to, for example, insolvency. And insolvency was very much a risk. And my argument here is that you measure the collectability and availability at the time of the contracting, not after the fact when Amway makes a decision, as the Eighth Circuit pointed out, to just pay themselves. Did anybody ask to certify this question to the Michigan Supreme Court? No one did. So, again, to avoid the double windfall of getting the benefit, the other insurance clauses should apply. I realize I'm at my time. Okay. You'll have your three minutes to rebuttal. Thank you. Good afternoon. Good afternoon, Your Honors. Matthew Nelson on behalf of AltaCore and the Amway entities. No case allowing an insurer to avoid coverage for a specifically insured risk by using an other insurance clause has ever applied for a fronting policy such as this. What is being requested of this Court is something that has not been done. The commercial context in which these policies arise is a situation where Amway specifically contracted with ASLIC for a specific type of primary coverage, here, Internet media liability coverage. And there is no real dispute that in the absence of applying the exclusions, the coverage is there. So, consequently, this idea that now there's a, that the other insurance clause here was intended by the parties to allow ASLIC to raid another tower of insurance, the Commercial General Insurance Policy Tower, for the purposes of avoiding paying coverage is simply inconsistent with not just the intentions of the parties, but also the language for some of the issues that the District Court identified in this Court. Isn't that just a question of whether the CGL policy would cover the loss or not? No, Your Honor. I think it's more specifically a question of, with regard to the policy language here, of whether the other insurance clause, whether the language in the other insurance clause, specifically the collectible and available to Amway language, would allow them to go ahead and reach out and raid the other tower. Well, I mean, it's like any other excess insurance. I mean, if you've got other insurance, you've got to use it first. So the question is, do you have other insurance that you're supposed to use first? It either covers this loss or not. And then the question is, is it valid and collectible, right? So this is not excess insurance. This is primary coverage offered by ACLIC.  And that's...  But, I mean, you hear what I'm saying. I mean, we have plenty of insurance policies that say, we kick in after somebody else kicks in, right? Correct. And that is not this policy. This policy is primary insurance. But even turning to that, where you find that here is with regard to the language that this Court was addressing a moment ago. And that is specifically with regards to whether this is collectible and available to Amway. And the simple fact of the matter is that it is not and has never been available to Amway. So Amway incurred the millions of dollars of both defense costs and then the settlement costs in this case. It could not then go to ACE and say, pay up. Because ACE would respond, you have a $2 million deductible. But I thought your friend on the other side suggested that ACE would pay and then seek reimbursement. Is that not how it works?  There's a $2 million deductible. They simply couldn't... They would say, you haven't met your deductible yet. You've paid it. There's nothing for us to pay. And then with regard to insolvency... Yeah, how would the insolvency work then? So in this situation, of course, insolvency would never be an issue because Amway paid the dollars in the first instance. But in a situation where Amway is insolvent and is unable to pay a claim, the insurance would be available to a third party to collect, but not to Amway. And to the extent that... What would the plaintiff do with the judgment? I have a $2 million judgment against Amway. Okay. It's apparently uncollectible. What does the plaintiff have to do? The plaintiff has to call the insurance company and say, you have to pay me? Or does Amway initiate that process by saying, hey, we're insolvent. Can you pay this guy? I think it could go either way. And if ACE refused to pay, the Amway could then assign, either in the bankruptcy court or otherwise, if we're talking about a true insolvency, the right to go collect. But the fact of the matter is, after ACE paid, ACE still would not be out the money because there's a letter of credit that stands in the background that even covers ACE from insolvency risk. So if ACE has to pay $500,000 on a claim or $2 million on a claim, there's a $2.9 million letter of credit standing in reserve so that ACE can draw down to cover any loss. And if Amway was to somehow become solvent again, it would then be obligated to replenish that letter of credit. But there's a letter of credit that even addresses the insolvency risk. So then why even have this policy? So why have the fronting policy? Right. Very simple. Do you get any benefit from it at all? You do. You have, for example, a warehousing situation or something similar where you need to provide evidence of insurance to enter into a contract. The policy provides it.  You need a certificate of insurance or whatever, right? Right. And that is the sole benefit from this policy. But doesn't that make it insurance? I mean, it satisfies some regulator or whatever requirement it is. So, I mean, maybe it's Judge Griffin's point. That makes it valid insurance. Maybe it's not collectible. It's got to be valid and collectible. Do you agree that it's valid insurance? Yes, we agree. There's no dispute among the parties that the insurance is valid. The dispute, as the district court... My understanding is there are some cases that say that self-insurance is collectible. Is that right? There are some cases, including the Continental Insurance case from the Eighth Circuit, that say that self-insurance is collectible insurance. Okay. Would there be any difference between a fronting policy and pure self-insurance on that front? I think that the answer is probably not. But the situation here is different in that we have additional language that's unusual in this other insurance policy. That is that it's not just that it's valid and collectible, but that it's valid and collectible insurance. To you. To you. Yeah, that's the other thing. It's not collectible to a plaintiff in another litigation, but it's got to be collectible to the insured, which is Amway here. And that's the difference with self-insurance. If Amway self-insures, it's not collectible to Amway. So that doesn't make any sense. Correct, Your Honor. And the only case that we've been able to find that addresses the specific language we have here is the Scottsdale insurance case from the First Circuit, which has the additional to you language. That's not Michigan law. We are trying to interpret what the Michigan Supreme Court would do with this case. And one thing they would do, I think, is that if this excess clause is vague or ambiguous, I think the Michigan Supreme Court would construe a vague and ambiguous clause against the drafter of the contract, drafter of the insurance policy, which is American. And, I mean, we're arguing how close this case is, and there's splits of authority here, but isn't that a rule of construction that you think the Michigan Supreme Court would adopt here? Your Honor, the Michigan Supreme Court has not changed that rule since you sat on the Michigan Court of Appeals. That continues to be the law in Michigan. All right. And I know there's a distinction between vagueness and ambiguities, but I think vague terms would also be construed against insurance companies in favor of the insured, which is your client, right? Correct, Your Honor. And I think that if this court concludes that what it needs to do is make the eerie guess. Right, which is what we have to do. I think I've got a pretty good idea how the Michigan Supreme Court is construing insurance contracts these days, and it's not in favor of the insurance companies. I mean, that's the way they're going. No, Your Honor. I'm in full agreement there. We look to see if there had been a recent insurance case from the Michigan Supreme Court to point this court to, but the court has currently constituted, has yet to address. Well, I don't know if we can say constituted, but we look at their decisions, what their decisions are saying as to construction of insurance policies. Do you think in the insolvency situation, is the insurance collectible in that case, in that factual scenario? In the insolvency situation, the insurance is collectible to a third party, yes. Well, what if Amway said, hey, we can't pay this judgment, can you give us the money and we'll pay the judgment? As a matter of mechanics with the insurance company, I don't believe that that would be how an insurance company would handle the situation because of the concern with regard to the actual payment of the funds. So, I figure out this collectibility, just in the insolvency situation, does collectibility just depend on what the facts are in the case? In this case, it happens Amway's not insolvent, so the insurance isn't collectible. If Amway were insolvent, it would be collectible, but that seems like an odd way to construe the contract, doesn't it? I mean, then your friend says, well, I'm measuring collectibility at the time of contracting. So, there's a situation where it would be collectible. Why wouldn't that be enough? Well, because the available-to language that is included here, under Michigan law, under the Liefers case, requires that the availability not be something that's theoretical or hypothetical. So, at the time of contracting here, Amway wasn't insolvent and had the ACE policies in place and had the letter of credit backing up the policies to address the insolvency risk. So, ultimately, you have a situation where even at the time of contracting, much less at the time of the actual loss, the policy is not collectible except in a hypothetical situation that's far attenuated from the actual facts here. Is it a hypothetical? I mean, it's specifically contemplated by the parties. I mean, I don't know if it's... It's not speculative, I suppose. Maybe it's hypothetical, but they thought about it, right? That's the only reason that that clause or the exception or whatever it is exists, or the safety valve, right? When you say the safety valve exists. Insolvency. Essentially, this is only real insurance if you're insolvent, right? Even then, there's still no risk transfer to ACE because of the letter of credit. So, we have a situation... Well, if they're insolvent, what is... Do you mean the letter of credit is like they're the first secured creditor on some specific pot of money that exists in a bank somewhere? Correct. That cannot be drawn down by Amway without the approval of the insured. They're contractually obligated to maintain a letter of credit with the funds such that ACE can draw upon them. Is that letter of credit to the deductible limit or what? So, at the time in 2006-2007, it was $2.9 million. To my understanding, that number has increased to over $6 million. So, it's greater than the policy limit of any one policy here. So, with regard... Brother Counsel referred to several other Michigan cases, the Elaslo case and the Jared case. The Elaslo case, I think, is an interesting case in that it very specifically ties its decision repeatedly to the No Fault in Financial Responsibility Act for a very specific reason. In Michigan, the legislature has adopted a public policy that requires all motorists and all owners of motor vehicles to maintain automobile insurance. And so, as part of that statutory framework... But doesn't the Jared case kind of unmoor it from that and say it was kind of based on general insurance principles? I mean, it uses that specific language, as I recall. It does. However, Jared turns into this situation where what Jared is talking about is whether what is being covered by the self-insurance plan there is coverage for the purposes of the statute, and is this something that is generally provided by insurance, and then talks about what insurance is. And so I don't think it's helpful to address the specific issue here of how the Michigan Supreme Court is going to address the particular situation of another insurance clause and the valid and collectible interpretation. So even though, yes, you have Jared talking about there's some general insurance principles that are there, Jared itself also arises in a situation where you have a statutory framework for the purposes of allocating risk in the heavily regulated no-fault insurance world that we live in in Michigan. Unless this court has further questions or questions about any of the other numerous issues that we haven't discussed this afternoon, I'll see the... Well, I guess I do have one. Judge Yonker found not only a breach of the duty to indemnify, but also a breach of the duty to defend. And unlike most big claims like this, I mean, I thought it was unusual. American didn't defend under a reservation of rights. They just totally denied it. And then they found to be in breach of the duty to defend. A breach of the duty to defend, I guess, makes them liable for the negotiated settlement, the judgment of $7.5 million that Amway did. But does it have other implications that they breached the duty to defend? Does that impact other issues in this case? Well, it also prevents them from challenging the reasonableness of the defense cost that that incurred as well. Okay, but they've conceded that on appeal. That's basically it. That's my understanding, Your Honor. Okay. All right. Thank you. Any further questions? Rebuttal, three minutes. Thank you, Your Honor. The ACE policies have a limit of $2 million per occurrence and $4 million in the aggregate. The undisputed record evidence is that the letter of credit we've been discussing, $2.9 million. That's a $1.1 million uncollateralized commitment. In the event of an insolvency, if claimants had $4 million in claims perfectly permissible under the policy, ACE would be out $1.1 million, even if they drew on the letter of credit. They obviously don't care if they're not in the case. I mean, it really does show it's hypothetical, doesn't it, the fact that they have no interest at all in this case, that it's all on Amway, it's all on the insured, that this insurance is really a front policy that is basically on paper. And I would respectfully submit that the Eighth Circuit addresses that squarely in Valspar, where they say it's not quite right to say that National Union did not need to pay the defense costs. As the district court carefully reasoned, and Valspar does not dispute, although Valspar was ultimately financially responsible for certain defense costs under its agreements with the National Union, it did not have to pay for the various advance money to National Union, which by implication actually paid for the defense. By the terms of the agreement, the basic arrangement was that National Union would pay the expenses and Valspar would pay National Union. That's exactly what the ACE policies call for here. Far from being free from any obligation to pay Valspar's defense, as Valspar asserts, National Union was on the hook unless and until Valspar performed or National Union exercised its rights. The Eighth Circuit goes on to say the fact that Valspar did not avail itself of National Union is irrelevant to the question of whether there's other valid and collectible insurance. The second point I would make is Michigan law has spoken to this issue in a lasso. And I agree that the Michigan Supreme Court here has said common understandings are relevant to the analysis. And in a lasso, there's an all-state insurance policy that said it was excess of other collectible insurance. And the Michigan Court of Appeals held that Enterprise Rental Car, making an agreement just simply to indemnify itself, it didn't even purchase a fronting insurance policy, that that was other collectible insurance under Michigan law. Collectible insurance to you? It just said other collectible insurance. To the insured. I mean, okay, that might be collectible to plaintiffs, other plaintiffs, third parties, but here it's got to be collectible to Amway. Right. But it's collectible in the sense that if one looks at a judgment in the insolvency instance where, and now the judge asked about this, what happens in the case of an insolvency when you have a third-party claimant that needs to collect a judgment? They're collecting the judgment from Amway through its insurance. That's mechanically what's happening. They're making a garnishment action for that purpose. All right. Any further questions? Thank you, counsel. The case will be submitted. We may call the next case.